UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Terrionna LR Davis,

         Debtor.
_____/

Chapter 13
Case No. 22-31147-jda
Hon. Joel D. Applebaum

## OPINION DENYING CONFIRMATION OF DEBTOR'S PLAN AND DISMISSING CHAPTER 13 CASE

### INTRODUCTION

A central purpose of the Bankruptcy Code, as described by the United States Supreme Court,

> is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' But in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'

*Grogan v. Garner*, 498 U.S. 279, 286-287 (1991) (internal citation omitted).

Notwithstanding the Supreme Court's limiting language, the opportunity to receive a bankruptcy discharge is not afforded solely to the "*honest* but unfortunate debtor." In a chapter 13 case, for example, while a case must be filed in good faith and a chapter 13 plan must be proposed in good faith, the debt to be discharged need not necessarily have been incurred in good faith. *In re Smith*, 286 F.3d 461, 467 (7th

Cir. 2002). As a result, a "Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditor's claims." *Id*.; *In re Heath*, 649 B.R. 313, 318 (Bankr. N.D. Ill. 2023). In the Sixth Circuit, determining whether a debtor has made such a good faith effort or whether a debtor is abusing the bankruptcy process requires consideration of the totality of the circumstances, of which a debtor's pre-petition conduct is only one among many. *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 858 (6th Cir. 1988) (considering whether plan filed in good faith); *See Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988) ("In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully.")

This case tests Debtor's ability to establish that she filed her case and proposed her chapter 13 plan in good faith despite (i) fraudulently obtaining a paycheck protection program ("PPP") loan by misrepresenting the existence of a business, (ii) repeatedly failing to disclose that PPP loan or its forgiveness on her petition, schedules and statement of financial affairs ("SOFA"), as repeatedly amended, and (iii) failing to disclose yet another business on her petition, schedules and SOFA, as repeatedly amended. Applying the totality of the circumstances test, the Court finds that Debtor did not file this case in good faith and that her pre- and post-petition conduct evidences an abuse of the bankruptcy process. Accordingly, this case will

be dismissed. Moreover, because the Court finds a lack of good faith and an abuse of the bankruptcy process, the Court will also impose a two-year bar on refiling. *See Riddle v. Greenberg (In re Riddle)*, 2020 WL 3498438 (B.A.P. 6th Cir. 2020).

## JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a) and the statutory and constitutional authority to enter a final order. *Stern v. Marshall*, 564 U.S. 462 (2011).

## STATEMENT OF FACTS

A. <u>Debtor's Chapter 7 Case</u>

On August 5, 2022, Debtor, Terrionna LR Davis, filed her voluntary individual chapter 7 bankruptcy petition. On her bankruptcy petition, Debtor indicated that she had not used any business name or d/b/a in the past 8 years, nor did she have an employer identification number ("EIN") (questions 2 and 4). She also indicated that she was not the sole proprietor of any business, part time or full time (question 12).

On Schedule A/B, line 19, Debtor indicated she had no interests in "non-publicly traded stock and interests in incorporated and unincorporated businesses."

Debtor's Schedule D listed one secured debt, a loan on Debtor's vehicle in the amount of $2,000. Her Schedule E/F listed no priority debts and $271,247.89 in

unsecured debts, the largest of which is a state court judgment in the amount of $260,966.89.[1] No debt was listed for a PPP loan.[2]

Debtor's Schedules I and J stated that Debtor works as a security guard for Serrato Corporation with monthly income of $2,970 and has monthly expenses of $2,969 leaving net income of $1.33.

Debtor's Statement of Financial Affairs ("SOFA") indicated the following: Under Part 2 ("Explain the Sources of Your Income), Debtor earned $6,234.15 from "employment or from operating a business during this year or the two previous years," although she did not specify whether that income was wages or from operating a business. (Part 2, question 4). Part 2 question 5 stated Debtor received no other income "during this year or the two previous calendar years."

### B. The United States Trustee's Complaint

On October 28, 2022, the United States Trustee ("UST") filed an adversary proceeding (AP Case No. 22-3036) asserting Debtor should be denied a discharge under 11 U.S.C. § 727 (c), (d) and (e). According to the UST's Complaint, Debtor obtained an $18,000 PPP Loan and she was "either not entitled to the loan because the business did not exist at that time, or if she was entitled to the loan, is concealing

---

[1] No proof of claim was timely filed by the judgment creditor.
[2] Presumably, Debtor did not include the debt because the loan had been forgiven pre-petition.

the company in her bankruptcy filings." (AP Complaint, Dkt. 1, pp. 1-2). Further, the UST's Complaint asserted that "[i]n this bankruptcy, the Debtor did not disclose the income she received from the PPP loan, or the business she claimed to have when she took out the loan. She also concealed records about this transaction by not disclosing them at her [section] 341 meeting of creditors and failed to explain the dissipation of the PPP funds. Her discharge should therefore be denied as a result." (AP Complaint, Dkt. 1, p. 2)

On November 11, 2022, Debtor and the UST entered into a stipulated settlement of the Adversary Proceeding (AP Dkt. 8). The stipulation indicated that Debtor wanted "to resolve the matter without the need for further inquiry or litigation, and without making any admissions" and "has chosen to waive her entitlement to a Chapter 7 discharge for any and all debts she incurred as of and prior to August 5, 2022." (AP Dkt. 8, ¶ 3). In exchange for Debtor's chapter 7 discharge waiver, the UST agreed it would "not contest the Debtor's right to convert this case to Chapter 13, and will neither contest the Debtor's right to receive a discharge in Chapter 13 based upon the conduct alleged in the [UST's] Complaint . . . or demand a specific repayment percentage in Chapter 13." (*Id*. at ¶ 9).

On November 18, 2022, Debtor filed her motion to convert this case from chapter 7 to chapter 13 (Dkt. 20). On November 28, 2022, this Court entered an Order Denying Discharge of Debtor under 11 U.S.C. § 727 (a)(10).[3]

On January 18, 2023, after a hearing on the Motion to Convert, the Court converted the case (Dkt. 29).[4] The Court indicated, however, that it made no findings regarding Debtor's good faith, and that no party in interest was precluded from challenging Debtor's good faith because of the conversion order.

    C.    <u>Debtor's Chapter 13 Case</u>

On January 30, 2023, Debtor filed amended schedules and a proposed chapter 13 Plan. Debtor's amended schedules I and J (Dkt. 39) show income of $4,297.15, expenses of $4,097.00, leaving net monthly income of $200.15. Debtor's plan (Dkt. 36) proposes 60 monthly payments of $200 per month and does not address any specific debts.

On February 9, 2023, Debtor filed an amended petition (Dkt. 41). As with Debtor's original chapter 7 petition, the amended petition states under oath that

---

[3] Section 727(a)(10) provides that "[t]he court shall grant the debtor a discharge, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter."

[4] The Chapter 13 Trustee did not receive notice of Debtor's Motion to Convert until after the Court's conversion order was entered.

Debtor has not used an assumed name or d/b/a in the past 8 years, and she does not have an employer identification number (questions 2 and 4).

On March 7, 2023, the Chapter 13 Trustee filed objections to confirmation of Debtor's plan (Dkt. 46). These objections addressed Debtor's failure to make plan payments, problems with Debtor's third-party wage order, inaccuracies in the plan's liquidation analysis, understatement of Debtor's income, failure to include her son's social security income or provide verification of the social security benefits, and failure to provide copies of Debtor's tax returns for 2021 and 2022, among other objections.

On March 9, 2023, Debtor filed amended schedules A/B, C and an amended SOFA (Dkts. 48 and 49). Amended Schedule A/B, line 19, still incorrectly indicated that Debtor did not have any interests in "non-publicly traded stock and interests in incorporated and unincorporated businesses." Debtor's amended SOFA, Part 2 (sources of income) discloses social security income, tax exempt interest and other income. It was silent regarding the receipt of PPP loan proceeds or debt forgiveness income as a result of the forgiveness of the PPP loan.

On March 31, 2023, Debtor filed amended schedules I and J (Dkt. 53). These amended schedules were filed to update Debtor's expenses to show income of $4,201, expenses of $4,001 and net income of $200.89. On that same date, Debtor also filed an amended proposed plan (Dkt. 54). The plan proposed the same terms,

- 7 -

22-31147-jda    Doc 96    Filed 12/01/23    Entered 12/01/23 08:39:16    Page 7 of 20

60 monthly payments of $200 per month, but proposed to have the Trustee pay Debtor's car note at $57.35 per month.

On April 13, 2023, Debtor again filed amended schedules I and J (Dkt. 58). According to the cover sheet for schedule amendments, these amendments were filed to update Debtor's expenses.

On April 28, 2023, after finally receiving Debtor's tax returns, the Trustee filed Amended Objections to Confirmation (Dkt. 62). The amended objections assert that, despite repeated amendments, Debtor's schedule I income is understated, that Debtor's 2022 federal tax return shows that Debtor operated a meal preparation business not previously disclosed by Debtor on her chapter 7 or chapter 13 petitions, bankruptcy schedules or SOFA, that Debtor fraudulently obtained a PPP loan by claiming she was the sole proprietor of a salon business, and that the salon business was not disclosed on her schedules or SOFA despite repeated amendments. The Trustee also notes that Debtor testified at her 341 hearing that she had not owned or operated a business in the last 6 years and, thus, did not disclose either the meal preparation or salon businesses. Debtor also did not provide bank statements evidencing the deposit of the PPP loan and subsequent bank statements evidencing its usage nor did Debtor provide verification of her son's social security benefits. The Trustee asserts that Debtor has filed this case in bad faith based on the totality

of the circumstances and seeks denial of plan confirmation and dismissal of the case with a one-year bar to refiling.

On May 3, 2023, Debtor filed amended schedules A/B, C and an amended SOFA (Dkt. 63). According to the cover sheet, these amendments were filed to disclose the meal preparation business discovered by the Chapter 13 Trustee through her review of Debtor's tax returns.

On May 3, 2023, Debtor filed an affidavit regarding PPP loans (Dkt. 64). titled "Affidavit of Special Circumstances." The Affidavit states that "based on public records, I [Debtor] received a PPP Loan from Itria Ventures, LLC in the amount of $18,848.00 on or around February 10, 2021." The Affidavit goes on to state that in 2020, Debtor's "tax preparer applied for this loan on my behalf." She further states that she "was made aware of the requirements for the application for this loan and did not know the application would reflect a beauty business that I did not own or operate" and "that it was not my intention to defraud or make any false oaths either written or oral."

On May 10, 2023, Debtor finally amended her SOFA, Part 2, Question 5 regarding other sources of income (Dkt. 66), to reflect the $18,457.50 in PPP funds she received in 2021.

A preliminary hearing on plan confirmation was held on May 16, 2023. During that hearing, the Court expressed concerns about how best to proceed with

the Trustee's "lack of good faith" confirmation objection. More specifically, the Court was concerned that Debtor was not fully aware that she might be exposed to potential criminal liability by testifying under oath how she obtained the PPP loan. The Court inquired whether, for the purposes of adjudicating the plan objections, the Court and the Chapter 13 trustee could treat the PPP loan as fraudulently obtained without the need for Debtor to testify under oath and, in turn, Debtor would agree to be bound by that treatment. The Court adjourned the hearing to May 24, 2023 to allow counsel to speak with his client and, if he wished, to consult with other counsel. (Dkt. 62)

At the May 24, 2023 hearing, Debtor's counsel reported that he had discussed the Court's concerns with his client and consulted with other counsel. Based on those discussions and consultations, counsel represented that Debtor agreed that, solely for the purposes of adjudicating the plan objections and without making any admissions, the Court and the Chapter 13 trustee could assume that the PPP loan was fraudulently obtained, an assumption that would be binding on Debtor. A briefing schedule to address the good faith issue was set and the hearing adjourned. (Dkt. 68)

On July 7, 2023, the Chapter 13 Trustee filed his Brief in Support of Objections to Confirmation. (Dkt. 77).

On July 27, 2023, Debtor filed her Brief in Support of Overruling the Trustee's Objections (Dkt. 80).

On August 11, 2023, the Chapter 13 Trustee filed his Reply Brief in Support of Objections to Confirmation (Dkt. 83).[5]

On October 4, 2023, the Court held an in-person hearing on the Chapter 13 Trustee's good faith objections, at the conclusion of which the Court took this matter under advisement.

## ANALYSIS

Section 1325 of the Bankruptcy Code provides, in pertinent part,

Except as provided in subsection (b), the court shall confirm a plan if –

(a)(3) the plan has been proposed in good faith and not by any means forbidden by law . . ..

(a)(7) the action of the debtor in filing the petition was in good faith . . ..

As explained by the Sixth Circuit,

> a good faith determination under § 1325(a)(3) requires an inquiry into all the facts and circumstances of a debtor's proposed plan . . .. [a] debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge . . .. Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her

---

[5] On October 1, 2023, Melissa Caouette was appointed successor Chapter 13 Trustee to replace Carl Bekofske, who retired effective September 30, 2023.

individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

*Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 858-859 (6th Cir. 1988) (internal citation omitted)

Although there are no precise formulae or measurements, the *Caldwell* court, relying on the Seventh Circuit's decision in *United States v. Estus (In re Estus)*, 695 F.2d. 311 (7th Cir. 1982), nevertheless identified several factors that a bankruptcy court may find meaningful in determining good faith with respect to a debtor's plan. These factors include, but are not limited to:

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

*Id.* at 317.

To supplement the *Estus* factors, the *Caldwell* court also identified the following considerations:

- 12 -
22-31147-jda    Doc 96    Filed 12/01/23    Entered 12/01/23 08:39:16    Page 12 of 20

> (1) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code; (2) good faith does not necessarily require substantial repayment of the unsecured claims; (3) the fact a debt is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13; and (4) the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not, *per se,* evidence of bad faith, but may be considered as part of the totality of the circumstances analysis.

*Caldwell*, 851 F.2d at 859. The *Caldwell* court emphasized, however, that no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith. Moreover, no one factor should be viewed as being a dispositive indication of the debtor's good faith. "'The totality of the circumstances' test means what it says: It exacts an examination of all the facts in order to determine the bona fides of the debtor.'" *Id*. at 860 (internal citation omitted).

Determining whether a debtor filed his or her *petition* in good faith also requires consideration of the totality of the circumstances, applying the same factors identified in the plan confirmation context. *Alt v. United States (In re Alt)*, 305 F.3d 413, 419, 420 (6th Cir. 2002) ("the 'same policy' of protecting against an abuse of the provisions and spirit of Chapter 13 'embodies the two good faith evaluations.'") (internal citation omitted). "However, given the more severe consequences [of dismissal], the law also recognizes that the 'bankruptcy court should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a).'" *Id*. at 420. (internal citation omitted). Because the Chapter 13 Trustee also challenges Debtor's good

- 13 -

22-31147-jda    Doc 96    Filed 12/01/23    Entered 12/01/23 08:39:16    Page 13 of 20

faith in filing her petition under §§ 1325(a)(7) and 1307, and requests dismissal of the petition with a one-year bar to refiling, the *Alt* court's admonition is applicable here.

In this case, the Chapter 13 Trustee asserts, and the Court agrees, Debtor lacked good faith in filing this case as demonstrated by Debtor's pre-petition conduct in fraudulently obtaining the PPP loan. But Debtor's lack of good faith is demonstrated by more than just her fraudulent pre-petition conduct. Here, Debtor also failed to disclose that loan or its forgiveness on her chapter 7 and chapter 13 petitions, failed to disclose that loan or its forgiveness in her original chapter 7 schedules and SOFA, or in her chapter 13 schedules and SOFA, as repeatedly amended, and failed to disclose that loan or its forgiveness during her chapter 7 section 341 meeting of creditors or at her subsequent chapter 13 section 341 meeting of creditors. Debtor's lack of good faith is further demonstrated by her repeated failures to disclose a separate meal preparation business that was reported on her tax return but not on any of her bankruptcy filings. If the Chapter 13 Trustee had not discovered this side business through a careful review of Debtor's tax returns, it is unlikely Debtor would have reported this business despite an obligation to do so. And notwithstanding the fact that the UST's complaint objecting to discharge in the Chapter 7 case laid out the facts of Debtor's fraudulently obtained PPP loan in *considerable* detail, and Debtor stipulated to the waiver of her chapter 7 discharge

and the conversion of this case to chapter 13, Debtor amended her schedules and/or SOFA *seven times* before finally disclosing the existence of the fraudulently obtained PPP loan proceeds.

Because the Court finds that Debtor did not file this case in good faith under §§ 1307(c) and 1325(a)(7), it is unnecessary to determine whether Debtor proposed her plan in good faith under § 1325(a)(3).

In response, Debtor argues that her pre-petition conduct had no bearing on her decision to file bankruptcy and, therefore, her non-bankruptcy conduct should not be considered in determining whether she filed her petition in good faith or whether she proposed her plan in good faith. According to Debtor, she filed bankruptcy to address unsecured debt she was having difficulty managing on her current income. The PPP loan proceeds, albeit fraudulently obtained, were received and dissipated eighteen months prior to her bankruptcy filing. The loan was thereafter forgiven and neither Itria Ventures LLC, as lender, nor the Small Business Administration, as guarantor, have asserted any claims in this case. Because the PPP loan is unrelated to this case, it cannot be argued that, by filing Chapter 7 and then converting to Chapter 13, Debtor is seeking to abuse the bankruptcy process. Rather, relying on *In re Heath*, 649 B.R. 313 (Bankr. N.D. Ill. 2023), Debtor argues that the Court's good faith inquiry should focus on Debtor's plan, not on whether the petition was filed in good faith and, moreover, "the Trustee is, in effect, seeking an adjudication

in this court about the propriety of the PPP loan when the loan is not related to this bankruptcy case. The Trustee has failed to show how the circumstances of the PPP loan have any relevance to the confirmation of the Debtor's plan." *Id.* at 317-318. Debtor also argues that amending schedules and SOFA to correct errors or omissions is not unusual and does not reflect a lack of good faith here, where the circumstances surrounding Debtor's PPP loan occurred 18 months prior to filing chapter 7.

Debtor's reliance on *In re Heath* is misplaced for several reasons. First, the *Heath* case addressed good faith in the filing the plan under § 1325(a)(3). In this case, the Chapter 13 Trustee based her objection on §§ 1325 (a)(3) and (a)(7), and § 1307(c), which necessarily includes an inquiry into a debtor's good faith in filing the petition. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373-375 (2007). Therefore, this Court's inquiry is not limited solely to whether Debtor's plan was filed in good faith, and the Court can consider Debtor's lack of good faith in filing her case.

Moreover, in *Heath*, the court found that the debtor was, in fact, a business owner and that she used the PPP loan proceeds to buy supplies and pay back rent in connection with that business. Unlike the debtor in *Heath*, Debtor in this case had no business and, therefore, she had no basis for accepting the PPP loan in the first place.

The Court cannot accept Debtor's remarkable assertion that there is no relationship between the fraudulently obtained PPP loan and Debtor's bankruptcy filing and/or Debtor's chapter 13 plan, and therefore, the case and the plan cannot be said to be lacking in good faith. Even if the Court assumes Debtor filed her chapter 7 bankruptcy petition to address claims unrelated to her fraudulently-obtained PPP loan, she utterly failed to comply with the Code's disclosure requirements. The PPP loan and her many disclosure failures became the entire focus of her chapter 7 case after the UST filed its complaint objecting to Debtor's discharge. In that complaint, the UST alleged not merely that Debtor fraudulently obtained her PPP loan by misrepresenting that she operated a beauty salon and by making further misrepresentations to obtain her loan forgiveness, but that she concealed the loan and misrepresented her income, among other failings, on her initial petition, on her chapter 7 schedules and SOFA, and during her section 341 meeting of creditors. (*See Complaint*, AP Case No. 22-3036, Dkt. No. 1, ¶¶ 10-19). To date, Debtor has yet to explain how the loan proceeds were dissipated. *Id.*, ¶ 20-21. In the Stipulation for Entry of Order Waiving Debtor's Discharge Under 11 U.S.C. § 727(a)(10), Debtor acknowledged that she was waiving her chapter 7 discharge so that the complaint could be resolved "*without the need for further inquiry* or litigation, and without making any admissions" (AP Case No. 22-3036,

- 17 -

22-31147-jda    Doc 96    Filed 12/01/23    Entered 12/01/23 08:39:16    Page 17 of 20

Dkt. No. 8, ¶ 3, emphasis added), thereby enabling her to continue her pattern of non-disclosure.

Even after this case converted to chapter 13, Debtor needed to amend her chapter 13 schedules and SOFA seven times before finally disclosing the PPP loan or receipt of the PPP loan proceeds. While amending schedules and SOFA, even multiple times, may not be unusual, here Debtor had the benefit of the detailed roadmap provided by the UST's complaint prior to conversion. This complaint laid out all of the facts necessary to immediately prepare accurate schedules and SOFA in the chapter 13 case disclosing the PPP loan or the receipt of the PPP loan proceeds. Debtor cannot seriously claim that she was unaware of the PPP loan or its importance to this case as this loan was the sole reason the Debtor converted her case to chapter 13 in the first instance. Moreover, even after multiple amendments, Debtor's disclosures still remained woefully incomplete. As the Chapter 13 Trustee's amended plan objection states, the tax returns finally delivered to the Chapter 13 Trustee revealed *yet another* business (this one involving meal preparation) that was not previously disclosed on either Debtor's chapter 7 or chapter 13 petition, schedules or SOFA, as repeatedly amended, or at either of her section 341 meetings. The Court cannot ignore Debtor's repeated failures to disclose critical information that she knew or should have known she was legally obligated to disclose despite having had innumerable opportunities to do so. Debtor's pre-petition conduct,

- 18 -

22-31147-jda    Doc 96    Filed 12/01/23    Entered 12/01/23 08:39:16    Page 18 of 20

coupled with her repeated and knowing failures to make the required post-petition disclosures evidence an abuse of the bankruptcy process and Debtor's lack of good faith in filing this case.

Debtor also argues that dismissal is unwarranted because Itria Ventures LLC and the Small Business Administration have not asserted claims against the Debtor in this case and, therefore, the Chapter 13 Trustee is inappropriately attempting to "assert claims on behalf of [a party] who [does] not claim that the Debtor owes [it] money." *Debtor's Brief*, Dkt. No. 80, p.9, quoting *In re Heath*, 649 B.R. at 318. It is not surprising that Itria or the SBA did not file claims in this case and their failure to do so does not support Debtor's arguments. Neither entity was served with the Notice of Commencement of this bankruptcy case because Debtor did not list them on her schedules or on the matrix of creditors used for serving the Notice of Commencement. Moreover, even had Itria Ventures and/or the SBA been served with the Notice of Commencement, their internal records would not reflect a claim since Debtor fraudulently obtained forgiveness of the PPP loan before she filed her bankruptcy petition. The failure to provide notice to the victims of a fraudulently obtained and fraudulently forgiven PPP loan is hardly a basis to find that this case was filed in good faith.

Because the Court finds that Debtor's petition was not filed in good faith, and that her pre- and post-petition conduct constitutes an abuse of the bankruptcy

- 19 -
22-31147-jda    Doc 96    Filed 12/01/23    Entered 12/01/23 08:39:16    Page 19 of 20

process, the Court will enter an order denying confirmation of Debtor's plan and dismissing this chapter 13 case. Moreover, in light of the Court's findings of bad faith and an abuse of the bankruptcy process, the order of dismissal will contain a two-year bar to refiling.

**Signed on December 1, 2023**



/s/ Joel D. Applebaum
**Joel D. Applebaum**
**United States Bankruptcy Judge**